THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* RALPH L. GRAZIANO and RAYMOND A. NAUGHTON, Appellants.

Second Department, January 17, 1972.

*John Chamberlain* for appellants.

*William Cahn, District Attorney (John P. Della Ratta* of counsel), for respondent.

GULOTTA, J. This appeal in consolidated *coram nobis* proceedings which were denied after a hearing brings up for review two questions: (1) whether the appellants were deprived of a fair trial by the pretrial Judge's extraction of a promise from the attorney for a defendant accomplice that he (the attorney) would not reveal to the accomplice a '' deal '' they had just made for a reduced plea and sentence, provided he (the accomplice) would testify against his codefendants (the appellants) and (2) whether the trial Assistant District Attorney was not under a duty to reveal the facts of the '' deal '' transaction, at which a member of his office had been present, or at least to make inquiry with relation thereto when the issue was raised on the trial, rather than merely deny any personal knowledge of the transaction.

The appellants and one Philip Scalice were indicted for robbery in the first degree, grand larceny in the third degree and possession of a weapon as a felony. Prior to trial a plea of guilty to third degree robbery was negotiated for Scalice in exchange for his promise to testify against his alleged accomplices. Each of the appellants was convicted and received concurrent indeterminate sentences, the maxima being 20 years on the robbery count, four years on the grand larceny count and seven years on the gun charge. Scalice was sentenced to the time already served by him, which was 258 days.

At the trial Scalice was one of the chief witnesses for the prosecution and he denied that any bargain had been made. It is urged now that this was true, since, although an arrangement had indeed been made, it was made with his attorney, Mr. Yellin, and not communicated to him (Scalice) at the direction of the pretrial Judge who approved it, under pain of its withdrawal if it were disclosed. Thus the People contend Scalice could not have been aware of any promise and so there was nothing to induce him to color his testimony; and that he

truthfully testified to any lack of knowledge. Their position as to the failure of their trial counsel to disclose it is sought to be justified on the ground that he had no personal knowledge of it because it was an office associate who had sat in on the negotiation and not he.

It strikes me as extremely naive for anyone to conclude that the existence and terms of this " deal " did not somehow percolate through to this wily criminal before testifying, although in observance of the agreement it was perhaps never repeated to him *in haec verba.*

We do not know exactly what was said by counsel to Scalice which induced him to testify for the People, since counsel claimed it was privileged when questioned on the subject, although he was allowed to make a conclusory statement as to what he *did not tell* his client. As a matter of fact, following the plea arrangement, Scalice was brought to the District Attorney's office and question and answer statements were taken from him on three separate occasions. The examination of May 28, 1968 reads in part as follows, commencing with a preliminary statement being made by Mr. Yellin to his client, Scalice:

" I'm instructing you now, as your attorney, that you are to cooperate completely with Mr. Weinberg [an Assistant District Attorney]. You answer every question truthfully and honestly concerning the crime for which you were charged and pled guilty, even though you implicate yourself, even though it implicates the others (bracketed matter supplied).

" Are there any questions you want to ask anybody before you get started? I'm just here to see that you play it fair with Mr. Weinberg. That's it.

" MR. SCALICE: Mr. Weinberg, I was told I would be given the County Jail for this.

" MR. WEINBERG: I want to tell you this, firstly before I even discuss anything with you, I want you to be sworn in. Then I'll tell you exactly what I have to tell you and I'm going to make sure it's on the record, that there are no promises made by the District Attorney's office.

" MR. YELLIN: That's right.

" MR. WEINBERG: Any promises that were made to you have nothing to do with me. You understand?

" MR. SCALICE: Then how do I know that the promise that was made —

" MR. WEINBERG: Here's your lawyer. He's sitting here with you, you see and any questions you want to ask him, he's here for your benefit. You see? That's the man you ask the questions.

"Mr. Scalice: Mr. Yellin, I was promised a year in the County Jail.

"Mr. Yellin: You know it. You were there when we took the plea. That's all there is. We went through this fifty times. We went through this fifty times you and I, Philip, so we know where we stand as far as that's concerned."

Thus there can hardly be any question that Scalice, his attorney and the prosecutor's office were aware of the " deal " prior to trial.

At the *coram nobis* hearing Scalice's counsel stated that the pretrial Judge had specifically directed him not to disclose to Scalice the fact that he would get only a year in the county jail should he testify upon the trial against his codefendants. This is conceded by the pretrial Judge and found as a fact by the hearing Judge. Counsel further testified that he could only assume that the Judge's direction of silence was made because of the possible effect this might have on the credibility of Scalice's testimony if it were revealed.

We thus have the unusual situation of (1) a Judge extracting a promise of silence as to leniency he was extending, (2) the accomplice's attorney knowing of the promise but remaining silent at the trial because of the Judge's proscription, (3) the prosecutor's office denying any knowledge of the plea bargain although one assistant was present at it and it was blurted out at least to another assistant during the taking of one of the question and answer statements, (4) the trial assistant presumably having these question and answer statements in his file and merely denying personal knowledge of the transaction and (5) the accomplice somehow learning of the bargain but denying any knowledge of it on the witness stand.

I do not think a conviction secured under the circumstances of this case should be permitted to stand.

In *People* v. *Savvides* (1 N Y 2d 554), which involved the failure of the prosecution to disclose a promise of leniency to an accomplice, Judge FULD (now Chief Judge) for the unanimous court said (p. 558): " Convincing though proof of guilt may be, and there can be no denial of its strength in this case, we could here affirm ' only if we were to announce a doctrine that the fundamentals of a fair trial need not be respected if there is proof in the record to persuade us of defendant's guilt.' (*People* v. *Mleczko, supra,* 298 N. Y. 153, 163.) We were not in *Mleczko,* and we are not now, prepared to announce such a doctrine."

Judge FULD also said (pp. 556–557): " The administration of justice must not only be above reproach, it must also be beyond the suspicion of reproach. * * *

" It is of no consequence that the falsehood bore upon the witness' credibility rather than directly on defendant's guilt. A lie is a lie, no matter what its subject, and, if it is in any way relevant to the case, the district attorney has the responsibility and duty to correct what he knows to be false and elicit the truth. Nor does it avail respondent to contend that defendant's guilt was clearly established or that disclosure would not have changed the verdict. * * * We may not close our eyes to what occurred; regardless of the quantum of guilt or the asserted persuasiveness of the evidence, the episode may not be overlooked. That the district attorney's silence was not the result of guile or a desire to prejudice matters little, for its impact was the same, preventing, as it did, a trial that could in any real sense be termed fair."

While it may be considered trite, apparently we cannot be reminded too often that a fair trial forms the very basis of our system of American jurisprudence. Concomitant with that principle it is imperative that the courts be unqualifiedly impartial, leaning neither toward the prosecution nor the defense.

It is for the jury to evaluate the testimony of a witness, without a proscription being placed on his attorney and without suppression of any facts relating to a promise of a more lenient sentence known to the prosecution, even though it may not have been the prosecution's intention to deceive (*People* v. *Mangi,* 10 N Y 2d 86). In any prosecutor's office, whether large or small, the knowledge of any one member of the staff of any official matter in his office must be chargeable to all members thereof, whether or not there is an actual exchange of information. The keeping of accurate records permits this transmission of information. Any other rule would be thoroughly unworkable and unfair to the accused. Thus the " deal" made with Scalice while one assistant was present should have been recorded on the District Attorney's file so that anyone handling the case would have been aware of it.

The order denying the writs of error *coram nobis* should be reversed, on the law and the facts, the applications granted and the judgments of conviction vacated.

RABIN, P. J., HOPKINS, MUNDER and LATHAM, JJ., concur.

Order reversed, on the law and the facts; applications granted; and judgments vacated.